Robinson, J.
This action was begun in the court of common pleas of Franklin county by Henry P. Streicher, a taxpayer, against Richard H. Shafer and the state highway commissioner, and others, to enjoin what the petition alleges to be an improvement of a portion of inter-county highway No. 222, known as the Findlay-Upper Sandusky road in Crawford and Salem townships in Wyandot county, Ohio, and designated by the state highway commis *529 sioner as Sections B and D of such improvement. That court granted the injunction, and the cause went to the court of appeals upon appeal, which court also enjoined the state highway commissioner and other state officials from proceeding under the contract.
The controversy grows out of the fact that the state highway commissioner awarded the contract to Richard H. Shafer, who was the lowest bidder, some 32 days after the date of receiving bids under the advertisement therefor, and contrary, as claimed, to the provisions of Section 1206, General Code, at which bidding the plaintiff was an unsuccessful bidder.
In 1914 the state had improved by original construction with water-bound macadam the two sections of highway covered by the Shafer contract, and thereafter the state had maintained those sections by applying thereto treatments of asphalt, oil and stone screenings.
The work contemplated by the bids of Henry P. Streicher and Richard H. Shafer was not undertaken upon the application of the county commissioners of Wyandot county, or of the township trustees of any township of that county, but the entire cost of the work was to be paid out of the state maintenance and repair funds. The finding of fact discloses the character of the work, as follows:
“That the nature of the improvement contemplated under said advertisement for the letting of November 8, 1920, is as follows: On the roadbed as it existed, was tó be first laid a macadam course or foundation varying in thickness from three and one-half inches to six inches, the thickness varying with *530 and being adjusted to meet the condition of the existing roadbed, such macadam course or foundation consisting of coarse stone and fine stone sprinkled with water and rolled. On top of this foundation was to be put an asphaltic wearing surface of bituminous concrete two inches thick, consisting of asphalt, sand and fine stone. The center construction just described was to be adjoined on each side by shoulders or berms six inches wide which were to be properly sloped outward from the level of the center construction; and the ditches were to be made to conform to the improved condition of the road. ’ ’
The finding of fact discloses that prior to the receiving of bids upon the contract in question bids had been received upon the work and material for these same sections, and that the defendant Shafer was a bidder therefor; that after receiving the bids the state highway commissioner rejected all bids and determined to, and did, through the department itself, by its own employes and equipment, construct the macadam foundation, and that the contract here in controversy relates to the asphaltic wearing surface of bituminous concrete two inches thick, consisting of asphalt, sand and fine stone.
The road is an inter-county highway, not a main market road. It necessarily follows that the code provisions relating exclusively to main market roads are not applicable here.
It is the contention of the plaintiffs in error that the work contemplated was resurfacing and reconstruction, authorized under the provisions of Section 1224, General Code. It is the contention of the defendant in error that the work contemplated was an improvement not contemplated by Section 1224, *531 General Code, and more extensive in its nature than therein contemplated, but that even if Section 1224, General Code, is broad enough to authorize the improvement the provisions of Section 1206, General Code, with reference to bids and letting, must be construed to be applicable thereto. '
Section 1206, General Code, provides: “Upon the receipt of a certified copy of the resolution of the county commissioners or township trustees that such improvement be constructed under the provisions of this chapter, the state highway commissioner shall advertise for bids,” etc. The section then sets out in detail the manner of advertising for and letting contracts, and provides: “Such award shall be made by the state highway commissioner within ten days after the date on which the bids are opened.” The “certified copy of the resolution of the county commissioners or township trustees” referred to in the above section, is provided for in Section 1204, General Code, and relates to the manner of securing state aid for inter-county highways and main market roads.
Section 1224, General Code, provides: “The state highway commissioner shall maintain. and repair to the required standard, and when in his judgment necessary, shall resurface, reconstruct or widen all inter-county highways, main market roads and bridges and culverts constructed by the state, by the aid of state money or taken over by the state after being constructed. In repairing inter-county highways and main market roads the state highway commissioner shall not be limited to the use of the material with which such inter-county highways or main market roads were originally constructed, but *532 may repair such inter-county highways or main market roads by the use of any material which he deems proper. When, in the repair of an inter-county highway or main market road, the state highway commissioner changes the type of such road, and uses, as the principal material in making such repair, a material different from that with which the road was originally constructed, not less than ten per cent, of the cost and expense of such repair shall be assessed against the property abutting on said road, or within one-half mile on either side thereof or within one mile on either side thereof, in the manner hereinbefore provided in the case of the construction of a road under the supervision of the state highway department. * * * The state highway commissioner may enter into a contract with any individual, firm or corporation which gives sufficient bond for the faithful performance of said contract, or with the county commissioners of any county or the township trustees of any township in which such highway is situated for the repair and maintenance of such highway, or any part thereof, according to the plans and specifications provided by the state commissioner, or for the furnishing of the material or labor for such repair and maintenance, or the state highway commissioner may furnish the material or labor or both and supervise the repair and maintenance.”
The state highway commissioner under the provisions of this section did construct the foundation, and, in the exercise of his discretion, determined to construct the surface by contract, and in the awarding of the contract determined to and did receive competitive bids, and in the specifications provided *533 that “The bidder shall file with his proposal, a Proposal Bond in aeeordanee with Section 1206 of the General Code of Ohio,” and in awarding the contract to the successful bidder, awarded it “on condition that said contractors comply with the provisions of Section 1206, General Code.” But this court does not deem it of importance whether the state highway commissioner at the time of the drawing of the specifications, and at the time of the awarding of the contract, was of the opinion that Section 1206 controlled, or whether he was merely adopting the provisions of that section as affording a procedure likely to secure for the state the best results.
The scope and comprehensiveness of Section 1206, General Code, is not extended by the interpretation of the state highway commissioner, and ought not to be extended by the interpretation of the courts. Tn fact, courts are prone to take upon themselves much unauthorized responsibility, to add to the uncertainty of the law by attempting to improve the acts of the legislature by interpretation, and to supplement the wisdom of the legislature by their own. The legislature by apt language made the provisions of Section 1206, General Code, applicable to those improvements which are instituted by a resolution of the county commissioners, or township trustees, within whose political subdivision the improvement is to be made, and, while it might have been wise for the legislature to have made the same provision with reference to resurfacing and reconstruction by the state highway commissioner, it did not do so. While also, it might have been wise for the legislature to have defined the words “resurface” and “reconstruct,” not having done so a court is not justified *534 m limiting the words beyond their usual and accepted meaning, and this court cannot- say that the work already done by the department, and the work contemplated by the contract, do not come within the ordinary, usual and generally accepted definitions of those terms. '
The legislature having made no provision governing competitive bidding upon contracts awarded under Section 1224, General Code, a court is not authorized to require that which the legislature has not required.
The state highway commissioner in the exercise of the discretion vested in him- by law advertised for and received competitive bids and awarded the contract to the lowest bidder. The legislature having made no provision therefor, the- state highway commissioner was at liberty to and did make the terms those which the legislature had provided for improvements under Section 1206, General Code, Having made the terms, in the absence bf bad faith, he was at liberty to change them -with the consent of the other contracting party.
The state highway -commissioner, being a part of the administrative department of government, is' responsible to that department, and in the absence of a violation of the statute, or an abuse of discretion, there is no occasion or justification for the judiciary department exercising supervision over him.

tJudgment reversed.

Marshall, C. J., Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.